# EXHIBIT 2



| Home | Bill Information | California Law | Publications | Other Resources | My Subscriptions | My Favorites |

## AB-587 Social media companies: terms of service. (2021-2022)

SHARE THIS:     Date Published: 09/14/2022 09:00 PM

**Assembly Bill No. 587**

CHAPTER 269

An act to add Chapter 22.8 (commencing with Section 22675) to Division 8 of the Business and Professions Code, relating to social media.

[ Approved by Governor  September 13, 2022. Filed with Secretary of State  September 13, 2022. ]

LEGISLATIVE COUNSEL'S DIGEST

AB 587, Gabriel. Social media companies: terms of service.

Existing law requires an operator of a commercial website or online service that collects personally identifiable information through the internet about individual consumers residing in California who use or visit its commercial website or online service to make its privacy policy available to consumers, as specified.

This bill would require a social media company, as defined, to post their terms of service for each social media platform, as defined, owned or operated by the company in a specified manner and with additional specified information, subject to certain exceptions. The bill would define "terms of service" to mean a policy or set of policies adopted by a social media company that specifies, at least, the user behavior and activities that are permitted on the internet-based service owned or operated by the social media company, and the user behavior and activities that may subject the user or an item of content to being actioned, as defined.

This bill would also require the social media company to submit reports, as specified, starting no later than January 1, 2024, to the Attorney General. The bill would specify the information required by the reports, including, but not limited to, the current version of the terms of service for each social media platform owned or operated by the company, specified categories of content and what policies the social media company has for that platform to address that content, and data related to violations of the terms of service for each platform. The bill would require the Attorney General to make all terms of service reports submitted pursuant to those provisions available to the public in a searchable repository on its official internet website.

The bill would state the intent of the Legislature that a social media company that violates the above provisions shall be subject to meaningful remedies sufficient to induce compliance with these provisions, and would specify civil penalties that a company shall be liable for if the bill's provisions are violated, and how the Attorney General or a city attorney may bring an action against violators. The bill would specify that the duties, obligations, remedies, and penalties imposed by the bill are cumulative to existing law.

Vote: majority   Appropriation: no   Fiscal Committee: yes   Local Program: no

THE PEOPLE OF THE STATE OF CALIFORNIA DO ENACT AS FOLLOWS:

SECTION 1. It is the intent of the Legislature that a social media company that violates this act shall be subject to meaningful remedies sufficient to induce compliance with this act.

SEC. 2. Chapter 22.8 (commencing with Section 22675) is added to Division 8 of the Business and Professions Code, to read:

CHAPTER 22.8. Content Moderation Requirements for Internet Terms of Service

22675. For purposes of this chapter, the following definitions apply:

(a) "Actioned" means a social media company, due to a suspected or confirmed violation of the terms of service, has taken some form of action, including, but not limited to, removal, demonetization, deprioritization, or banning, against the relevant user or relevant item of content.

(b) (1) "Content" means statements or comments made by users and media that are created, posted, shared, or otherwise interacted with by users on an internet-based service or application.

   (2) "Content" does not include media put on a service or application exclusively for the purpose of cloud storage, transmitting files, or file collaboration.

(c) "Public or semipublic internet-based service or application" excludes a service or application used to facilitate communication within a business or enterprise among employees or affiliates of the business or enterprise, provided that access to the service or application is restricted to employees or affiliates of the business or enterprise using the service or application.

(d) "Social media company" means a person or entity that owns or operates one or more social media platforms.

(e) "Social media platform" means a public or semipublic internet-based service or application that has users in California and that meets both of the following criteria:

   (1) (A) A substantial function of the service or application is to connect users in order to allow users to interact socially with each other within the service or application.

      (B) A service or application that provides email or direct messaging services shall not be considered to meet this criterion on the basis of that function alone.

   (2) The service or application allows users to do all of the following:

      (A) Construct a public or semipublic profile for purposes of signing into and using the service or application.

      (B) Populate a list of other users with whom an individual shares a social connection within the system.

      (C) Create or post content viewable by other users, including, but not limited to, on message boards, in chat rooms, or through a landing page or main feed that presents the user with content generated by other users.

(f) "Terms of service" means a policy or set of policies adopted by a social media company that specifies, at least, the user behavior and activities that are permitted on the internet-based service owned or operated by the social media company, and the user behavior and activities that may subject the user or an item of content to being actioned.

22676. (a) A social media company shall post terms of service for each social media platform owned or operated by the company in a manner reasonably designed to inform all users of the social media platform of the existence and contents of the terms of service.

(b) The terms of service posted pursuant to subdivision (a) shall include all of the following:

   (1) Contact information for the purpose of allowing users to ask the social media company questions about the terms of service.

   (2) A description of the process that users must follow to flag content, groups, or other users that they believe violate the terms of service, and the social media company's commitments on response and resolution time.

   (3) A list of potential actions the social media company may take against an item of content or a user, including, but not limited to, removal, demonetization, deprioritization, or banning.

2

(c) The terms of service posted pursuant to subdivision (a) shall be available in all Medi-Cal threshold languages, as defined in subdivision (c) of Section 128552 of the Health and Safety Code, in which the social media platform offers product features, including, but not limited to, menus and prompts.

**22677.** (a) On a semiannual basis in accordance with subdivision (b), a social media company shall submit to the Attorney General a terms of service report. The terms of service report shall include, for each social media platform owned or operated by the company, all of the following:

(1) The current version of the terms of service of the social media platform.

(2) If a social media company has filed its first report, a complete and detailed description of any changes to the terms of service since the previous report.

(3) A statement of whether the current version of the terms of service defines each of the following categories of content, and, if so, the definitions of those categories, including any subcategories:

(A) Hate speech or racism.

(B) Extremism or radicalization.

(C) Disinformation or misinformation.

(D) Harassment.

(E) Foreign political interference.

(4) A detailed description of content moderation practices used by the social media company for that platform, including, but not limited to, all of the following:

(A) Any existing policies intended to address the categories of content described in paragraph (3).

(B) How automated content moderation systems enforce terms of service of the social media platform and when these systems involve human review.

(C) How the social media company responds to user reports of violations of the terms of service.

(D) How the social media company would remove individual pieces of content, users, or groups that violate the terms of service, or take broader action against individual users or against groups of users that violate the terms of service.

(E) The languages in which the social media platform does not make terms of service available, but does offer product features, including, but not limited to, menus and prompts.

(5) (A) Information on content that was flagged by the social media company as content belonging to any of the categories described in paragraph (3), including all of the following:

(i) The total number of flagged items of content.

(ii) The total number of actioned items of content.

(iii) The total number of actioned items of content that resulted in action taken by the social media company against the user or group of users responsible for the content.

(iv) The total number of actioned items of content that were removed, demonetized, or deprioritized by the social media company.

(v) The number of times actioned items of content were viewed by users.

(vi) The number of times actioned items of content were shared, and the number of users that viewed the content before it was actioned.

(vii) The number of times users appealed social media company actions taken on that platform and the number of reversals of social media company actions on appeal disaggregated by each type of action.

(B) All information required by subparagraph (A) shall be disaggregated into the following categories:

(i) The category of content, including any relevant categories described in paragraph (3).

3

(ii) The type of content, including, but not limited to, posts, comments, messages, profiles of users, or groups of users.

(iii) The type of media of the content, including, but not limited to, text, images, and videos.

(iv) How the content was flagged, including, but not limited to, flagged by company employees or contractors, flagged by artificial intelligence software, flagged by community moderators, flagged by civil society partners, and flagged by users.

(v) How the content was actioned, including, but not limited to, actioned by company employees or contractors, actioned by artificial intelligence software, actioned by community moderators, actioned by civil society partners, and actioned by users.

(b) (1) A social media company shall electronically submit a semiannual terms of service report pursuant to subdivision (a), covering activity within the third and fourth quarters of the preceding calendar year, to the Attorney General no later than April 1 of each year, and shall electronically submit a semiannual terms of service report pursuant to subdivision (a), covering activity within the first and second quarters of the current calendar year, to the Attorney General no later than October 1 of each year.

(2) Notwithstanding paragraph (1), a social media company shall electronically submit its first terms of service report pursuant to subdivision (a), covering activity within the third quarter of 2023, to the Attorney General no later than January 1, 2024, and shall electronically submit its second terms of service report pursuant to subdivision (a), covering activity within the fourth quarter of 2023, to the Attorney General no later than April 1, 2024. A social media platform shall submit its third report no later than October 1, 2024, in accordance with paragraph (1).

(c) The Attorney General shall make all terms of service reports submitted pursuant to this section available to the public in a searchable repository on its official internet website.

**22678.** (a) (1) A social media company that violates the provisions of this chapter shall be liable for a civil penalty not to exceed fifteen thousand dollars ($15,000) per violation per day, and may be enjoined in any court of competent jurisdiction.

(2) A social media company shall be considered in violation of the provisions of this chapter for each day the social media company does any of the following:

(A) Fails to post terms of service in accordance with Section 22676.

(B) Fails to timely submit to the Attorney General a report required pursuant to Section 22677.

(C) Materially omits or misrepresents required information in a report submitted pursuant to Section 22677.

(3) In assessing the amount of a civil penalty pursuant to paragraph (1), the court shall consider whether the social media company has made a reasonable, good faith attempt to comply with the provisions of this chapter.

(b) Actions for relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by the Attorney General or by a city attorney of a city having a population in excess of 750,000, or by a city attorney in a city and county in the name of the people of the State of California upon their own complaint or upon the complaint of a board, officer, person, corporation, or association.

(c) If an action pursuant to this section is brought by the Attorney General, one-half of the penalty collected shall be paid to the treasurer of the county in which the judgment was entered, and one-half to the General Fund. If the action is brought by a city attorney, one-half of the penalty collected shall be paid to the treasurer of the city in which the judgment was entered, and one-half to the treasurer of the county in which the judgment was entered.

**22679.** (a) The duties and obligations imposed by this chapter are cumulative to any other duties or obligations imposed under local, state, or federal law and shall not be construed to relieve any party from any duties or obligations imposed under law.

(b) The remedies or penalties provided by this chapter are cumulative to each other and to any other remedies or penalties available under local, state, or federal law.

4

**22680.** This chapter shall not apply to a social media company that generated less than one hundred million dollars ($100,000,000) in gross revenue during the preceding calendar year.

**22681.** This chapter shall not be construed to apply to an internet-based service or application for which interactions between users are limited to direct messages, commercial transactions, consumer reviews of products, sellers, services, events, or places, or any combination thereof.