UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| X CORP., <br><br> Plaintiff, <br><br> v. <br><br> ROBERT A. BONTA, Attorney General of California, in his official capacity, <br><br> Defendant. | No. 2:23-cv-01939 WBS AC <br><br> MEMORANDUM AND ORDER RE: PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION |

----oo0oo----

This matter is before the court on plaintiff's motion for a preliminary injunction to enjoin the enforcement of Assembly Bill ("AB") 587[1] upon the grounds that the statute is unconstitutional under the First Amendment and preempted by federal statute.  (Docket No. 18.)  Because the court finds for the following reasons that plaintiff has failed to establish the

---

[1] AB 587 has been codified at Cal. Bus. & Prof. Code § 22675 et seq.  Because the parties refer to the law as "AB 587" throughout their briefs, the court will refer to the statute as AB 587 for convenience.

1

likelihood of success on the merits, the motion must be denied. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20-22 (2008) (to prevail on a motion for preliminary injunction, a plaintiff must show clearly that it is likely to succeed on the merits).

I. First Amendment

AB 587 requires that social media companies post their terms of service "in a manner reasonably designed to inform all users of the social media platform of the existence and contents of the terms of service." Cal. Bus. & Prof. Code § 22676(a). The law also requires that such companies submit twice yearly "terms of service reports" to the Attorney General containing, inter alia, the current version of the terms of service for their platform, as well as a description of content moderation practices used by the social media company for that platform, including, but not limited to, how the company addresses (A) hate speech or racism; (B) extremism or radicalization; (C) disinformation or misinformation; (D) harassment; and (E) foreign political interference. See id. § 22677(a).

A. The Terms of Service Requirement

The "terms of service" as defined in AB 587 appear to bear all of the hallmarks of commercial speech. Under Bolger v. Youngs Drug Products Corporation, 463 U.S. 60 (1983), there is "strong support" for finding that the speech is commercial where "(1) the speech is an advertisement, (2) the speech refers to a particular product, and (3) the speaker has an economic motivation." Ariix, LLC v. NutriSearch Corp., 985 F.3d 1107, 1116 (9th Cir. 2021).

1       Although the terms of service may not literally be
2  advertisements in the sense of proposing a commercial
3  transaction, they are directed to potential consumers and may
4  presumably play a role in the decision of whether to use the
5  platform.  They refer to the company's product or service, i.e.,
6  the social media platform, and communicate important information
7  concerning the platform and how users may utilize the product.
8  There is also an economic motivation implicated by communicating
9  information about the platform in the company's terms of service
10 -- which social media companies, including X Corp., typically do
11 voluntarily -- so that individuals can decide whether they want
12 to use it.

13      Because the terms of service are part of a commercial
14 transaction and appear to satisfy the Bolger factors, the court
15 will treat the terms of service requirement as a provision
16 requiring commercial speech.  Considered as such, the terms of
17 service requirement appears to satisfy the test set forth by the
18 Supreme Court in Zauderer v. Office of Disciplinary Counsel of
19 Supreme Court of Ohio, 471 U.S. 626 (1985), for determining
20 whether governmentally compelled commercial disclosure is
21 constitutionally permissible under the First Amendment.  The
22 information required to be contained in the terms of service
23 appears to be (1) "purely factual and uncontroversial," (2) "not
24 unjustified or unduly burdensome," and (3) "reasonably related to
25 a substantial government interest."  See Cal. Chamber of Com. v.
26 Council for Educ. & Rsch. on Toxics, 29 F.4th 468, 477 (9th Cir.
27 2022), cert. denied, 143 S. Ct. 1749 (2023).

28      B.   The Reporting Requirement

1          The reports to the Attorney General compelled by AB 587
2 do not so easily fit the traditional definition of commercial
3 speech, however.  The compelled disclosures are not
4 advertisements, and social media companies have no particular
5 economic motivation to provide them.  Nevertheless, the Fifth and
6 Eleventh Circuits recently applied Zauderer in analyzing the
7 constitutionality of strikingly similar statutory provisions
8 requiring social media companies to disclose information going
9 well beyond what is typically considered "terms of service."  See
10 NetChoice, LLC v. Att'y Gen. of Florida, 34 F.4th 1196, 1230
11 (11th Cir. 2022), cert. granted in part sub nom. Moody v.
12 Netchoice, LLC, No. 22-277, 2023 WL 6319654 (U.S. Sept. 29,
13 2023), and cert. denied sub nom. Netchoice v. Moody, No. 22-393,
14 2023 WL 6377782 (U.S. Oct. 2, 2023); NetChoice, LLC v. Paxton,
15 446, 485 (5th Cir. 2022), cert. granted in part sub nom.
16 Netchoice, LLC v. Paxton, No. 22-555, 2023 WL 6319650 (U.S. Sept.
17 29, 2023).

18          Following the lead of the Fifth and Eleventh Circuits,
19 and applying Zauderer to AB 587's reporting requirement as well,
20 the court concludes that the Attorney General has met his burden
21 of establishing that that the reporting requirement also
22 satisfies Zauderer.  The reports required by AB 587 are purely
23 factual.  The reporting requirement merely requires social media
24 companies to identify their existing content moderation policies,
25 if any, related to the specified categories.  See Cal. Bus. &
26 Prof. Code § 22677.  The statistics required if a company does
27 choose to utilize the listed categories are factual, as they
28 constitute objective data concerning the company's actions.  The

4

required disclosures are also uncontroversial.  The mere fact that the reports may be "tied in some way to a controversial issue" does not make the reports themselves controversial.  See CTIA - The Wireless Ass'n v. City of Berkeley ("CTIA II"), 928 F.3d 832, 845 (9th Cir. 2019).

While the reporting requirement does appear to place a substantial compliance burden on social medial companies, it does not appear that the requirement is unjustified or unduly burdensome within the context of First Amendment law.  "A disclosure is 'unduly burdensome' when the [disclosure] 'effectively rules out' the speech it accompanies." Nationwide Biweekly Admin., Inc. v. Owen, 873 F.3d 716, 734 (9th Cir. 2017) (quoting Ibanez v. Fla. Dep't of Bus. & Prof'l Regulation, Bd. of Accountancy, 512 U.S. 136, 146 (1994)).  Plaintiff argues that adopting the specified content categories and creating mechanisms to monitor the required metrics would require a vast expenditure of resources, rendering the reporting requirement unduly burdensome.  However, AB 587 does not require that a social media company adopt any of the specified categories.  See Cal. Bus. & Prof. Code § 22677.  Further, Zauderer is concerned not merely with logistical or economic burdens, but burdens on speech.

Finally, the court concludes that the Attorney General has met his burden of showing that the compelled disclosures are reasonably related to a substantial government interest in requiring social media companies to be transparent about their content moderation policies and practices so that consumers can make informed decisions about where they consume and disseminate news and information.  See Nationwide, 873 F.3d at 733-35.  This

interest is supported by the legislative history.  See, e.g., Cal. Assembly, Rep. of Comm. on Priv. & Consumer Prot., 2021-22 Sess. (AB 587), at 1 (Mar. 25, 2021) (AB 587 "seeks transparency by requiring social media companies to post their 'terms of service' . . .").  The state's transparency interest is "more than trivial," see CTIA II, 928 F.3d at 844, because social media content moderation is a topic of public concern.

II. Preemption

Plaintiff also argues that AB 587 is preempted by the Communications Decency Act ("CDA"), 47 U.S.C. § 230. Specifically, plaintiff points to section 230(c), which provides: "No provider or user of an interactive computer service shall be held liable on account of any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected."  Id. § 230(c)(2)(A).  The purpose of section 230(c) "is to provide 'protection for "Good Samaritan" blocking and screening of offensive material.'  That means a website should be able to act as a 'Good Samaritan' to self-regulate offensive third party content without fear of liability." Doe v. Internet Brands, Inc., 824 F.3d 846, 851–52 (9th Cir. 2016) (quoting 47 U.S.C. § 230(c)).

The CDA "explicitly preempts inconsistent state laws," HomeAway.com, Inc. v. City of Santa Monica, 918 F.3d 676, 681 (9th Cir. 2019), providing that "no liability may be imposed under any State or local law that is inconsistent with [section

6

230],'" 47 U.S.C. § 230(e)(3).

Plaintiff argues that the CDA preempts AB 587 on theories of both conflict and express preemption. "Although express and conflict preemption are analytically distinct inquiries, they effectively collapse into one when the preemption clause uses the term 'inconsistent.' Under either approach, the question is whether state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Jones v. Google LLC, 73 F.4th 636, 644 (9th Cir. 2023) (internal quotation marks and citations omitted).

AB 587 is not preempted. Plaintiff argues that "[i]f X Corp. takes actions in good faith to moderate content that is 'obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable,' without making the disclosures required by AB 587, it will be subject to liability," thereby contravening section 230. (Pl.'s Mem. (Docket No. 20) at 72.) This interpretation is unsupported by the plain language of the statute. AB 587 only contemplates liability for failing to make the required disclosures about a company's terms of service and statistics about content moderation activities, or materially omitting or misrepresenting the required information. See Cal. Bus. & Prof. Code § 22678(2). It does not provide for any potential liability stemming from a company's content moderation activities per se. The law therefore is not inconsistent with section 230(c) and does not interfere with companies' ability to "self-regulate offensive third party content without fear of liability." See Doe, 824 F.3d at 852. Accordingly, section 230 does not preempt AB 587.

7

IT IS THEREFORE ORDERED that plaintiff's motion for preliminary injunction (Docket No. 18) be, and the same hereby is, DENIED.

Dated:  December 28, 2023

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE